UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAMONT HAMILTON,

        Plaintiff,

vs.

                                        Case No. 05-CV-70313
                                        HON. GEORGE CARAM STEEH

TADARIAL J. STURDIVANT,
in his official capacity as
Director of the Michigan State Police,

        Defendant.

_____/

ORDER DENYING PLAINTIFF'S MOTION FOR
INJUNCTIVE AND DECLARATORY RELIEF (#17) AND
ORDERING PLAINTIFF TO SHOW CAUSE ON OR BEFORE
DECEMBER 1, 2005 WHY HIS CLAIMS SHOULD NOT BE DISMISSED

    In this civil action under 42 U.S.C. § 1983 and state law, plaintiff Lamont Hamilton, appearing pro se, moves for preliminary and/or permanent injunctive and declaratory relief preventing, restraining, and enjoining defendant Michigan State Police Director Tadarial Sturdivant from further enforcing Michigan's Sex Offender's Registration Act ("SORA"), M.C.L. § 28.721 et seq., against plaintiff, and from further interfering with plaintiff's constitutional rights. For the reasons set forth below, plaintiff's motion will be DENIED. Plaintiff will also be ordered to SHOW CAUSE why his claims should not be dismissed.

**I. Background**

    Plaintiff filed a complaint on January 28, 2005 alleging he is being unlawfully required to register under Michigan's SORA for the criminal offense of attempted sexual conduct-fourth degree, M.C.L. § 750.520e(1)(a), as adjudicated under Michigan's Holmes Youthful Trainee Act ("YTA"), M.C.L. § 762.11 et seq.. Plaintiff alleges that he pleaded

guilty to attempted criminal sexual conduct-fourth degree on August 9, 2000, was sentenced under Michigan's YTA on September 28, 2000, that his YTA status as a trainee was terminated on September 26, 2002, and that the YTA and SORA require him to publicly register as a sex-offender. Plaintiff alleges he remains a permanent Michigan resident, and is currently a student at George Mason University in Arlington, Virginia. Plaintiff alleges he has been informed that if he does not change his permanent residency to Virginia as a consequence of being a registered sex offender under Michigan's SORA, and if he does not register as a sex offender with the Virginia State Police, he will be subject to imminent prosecution under Virginia law. Plaintiff alleges his continuing sex offender registration requirement under Michigan's SORA, coupled with the requirements of Virginia law, constitute: denial of procedural and substantive due process under state and federal law (Counts I-IV), violation of a right to privacy under both state and federal law (Count V), defamation (Count VI), violation of the prohibition against ex post facto laws under state and federal law (Counts VII-VIII), violation of his right to equal protection under state and federal law (Counts IX-XII), and violation of the prohibition against cruel and unusual punishment under both state and federal law (Counts XIII-XIV).

By Order of February 11, 2005, the court denied plaintiff's motion for a temporary restraining order, reasoning in part:

> Plaintiff relies on his claims of cruel and unusual punishment, denial of equal protection, denial of substantive due process, and denial of a right to privacy as claims having a substantial likelihood of success on their merits. Two cases relied upon by plaintiff, Fullmer v. Michigan Dept. of State Police, 360 F.3d 579 (6th Cir. 2004) and Akella v. Michigan Dept. of State Police, 67 F.Supp.2d 716 (E.D. Mich. 1999), weigh *against* plaintiff's position. The Sixth Circuit in Fullmer reversed an injunction issued by a federal district judge on concluding that the public notification provisions of Michigan's SORA did not violate the plaintiff's right to procedural due process. Fullmer, 360 F.3d at 582 (quoting Conn. Dep't of Pub. Safety v. Doe, 538 U.S. 1, 11 (2003)). Recognizing that the Supreme Court "left open the possibility that a plaintiff might be able to show that a registry of this kind violates substantive due process," the Fullmer court, like the Supreme Court, did not reach the

2

substantive due process issue because a substantive due process claim had not been raised. Id. at 582. The "possibility" that plaintiff Hamilton "might be able to show" a violation of substantive due process does not equate to a substantial likelihood of success on the merits of such a claim. In Akella, a federal district judge in this District held that the Michigan SORA did *not* violate the procedural due process rights, substantive due process rights, or privacy rights of two plaintiffs required to register under the SORA for acts of criminal sexual conduct for which they pleaded guilty to having sex with a minor. Akella, 67 F.Supp.2d at 720-21, 726, 729-731, 733. Plaintiff's reliance on the dissenting opinion in People v. Rahilly, 247 Mich. App. 108, 635 N.W.2d 227 (2001), in which a 2-1 majority of the Michigan Court of Appeals held that completion of the requirements of the YTA does *not* provide either an exemption from registration under the SORA, nor removal of information from the SORA registry, is misplaced. Plaintiff has failed to cite persuasive authority to support his cruel and unusual punishment claim. In contrast, see Smith v. Doe, 538 U.S. 84 (2003) (holding that Alaska Sex Offender Registration Act was constitutional, was not punitive, and did not violate ex post facto clause); Cutshall v. Sudquist, 193 F.3d 466 (6th Cir. 1999) (holding that Tennessee Sex Offender Registration and Monitoring Act did not violate prohibition against double jeopardy, implicate constitutionally protected liberty or property interests in employment, violate any state or federal constitutionally protected liberty or property interest in employment, nor violate the equal protection clause); Lanni v. Engler, 994 F.Supp. 849 (E.D. Mich. 1998) (dismissing claims that SORA violated double jeopardy, ex post facto, bill of attainder, due process, or equal protection clauses, constituted cruel or unusual punishment, or violated right to privacy); Doe v. Kelley, 961 F.Supp. 1105 (W.D. Mich. 1997) (denying preliminary injunction on failure to show substantial likelihood of success on the merits of claims alleging ex post facto, double jeopardy, cruel and unusual punishment, bill of attainder, due process, and privacy interest violations arising from retroactive application of amended SORA requirements). Plaintiff has failed to demonstrate a likelihood of success on the merits of his claims sufficient to support the issuance of an ex parte TRO. Plaintiff has likewise failed to make a convincing argument that he will suffer irreparable harm if the requested TRO is not immediately entered, that others would not suffer substantial harm if the court enjoined enforcement of Michigan's SORA, or that public interests would best be served by issuing the requested ex parte TRO. Sundquist, 175 F.3d at 460; Martin, 924 F.2d at 103 n. 3. Accordingly, plaintiff's motion for a TRO will be denied.

In closing, the court notes that plaintiff admits in his complaint that he pleaded guilty [to] attempted criminal sexual conduct-fourth degree on August 9, 2000, was sentenced for the crime on September 28, 2000 under Michigan's YTA, that his status as a YTA trainee was terminated on September 26, 2002, and that the YTA at M.C.L. § 762.14(3), and the SORA at M.C.L. § 28.722(a)(ii)(A) and (e)(xii), required his public registration as a sex-offender under the SORA. Plaintiff's subsequent argument that he is not required to register under the SORA because he was not technically "convicted" of a sex crime is, at best, curious in light of the YTA and SORA

>provisions cited by plaintiff. Plaintiff's alternative argument that it was impossible for him to have violated M.C.L. § 750.520e(1)(a), under which he was sentenced, because the victim of his crime was 19 years old, and not between the ages of 13 to 16 as required by the statute, fails to explain why plaintiff pleaded guilty to attempted criminal sexual conduct-fourth degree, and whether plaintiff would have still been required to register under the SORA had he been sentenced under the appropriate criminal statute.

February 11, 2005 Order, at 3-6.

With the denial of plaintiff's motion for a temporary restraining order, the court conducted a status conference on April 13, 2005 at which plaintiff appeared by phone. The court discussed with the parties the possibility of options available before the state sentencing court, and thereafter issued an April 14, 2005 Briefing Schedule requiring plaintiff to file a supplement brief in support of injunctive relief by July 1, 2005, defendant to file a response by July 11, 2005, and plaintiff to file a reply by July 25, 2005. Consistent with the parties' agreement, it was also ordered that "[o]ral argument will not be heard unless otherwise ordered by the court." April 14, 2005 Briefing Schedule. The court is in receipt of the parties' briefs, and plaintiff's claims for permanent injunctive and declaratory relief are now ripe for review.

## II. Analysis

In his July 6, 2005 motion for injunctive relief and July 25, 2005 reply brief, plaintiff argues that he is being subjected to cruel and unusual punishment, the denial of equal protection of law, and a denial of substantive due process in that he is legally and factually innocent of the criminal offense of attempted fourth-degree criminal sexual conduct, it was legally impossible for him to commit the crime, he does not have a criminal "conviction" for the offense, defendant continues to falsely publish that plaintiff was "convicted" of attempted fourth-degree criminal sexual conduct, and the YTA requires that information pertaining to plaintiff's criminal case be maintained as a non-public record. Plaintiff continues that 2004 amendments to the SORA, including a provision that a registrant is to

be removed from the sex offender list upon completion of his YTA requirements, applies only to individuals sentenced under the YTA on or after October 1, 2004, constituting a further denial of equal protection of law in that plaintiff was sentenced on September 23, 2000. Plaintiff argues that another 2004 SORA amendment permitting individuals like himself, sentenced prior to October 1, 2004, to reduce their registration requirement from 25 years to 10 years, does not cure this unequal and arbitrary application of law. Plaintiff reiterates his allegation that he was informed by Virginia State Police officials that he must register as a convicted sex-offender in the State of Virginia, and to do so, he must surrender his Michigan driver's license and obtain a Virginia driver's license, an alleged unconstitutional interference with plaintiff's right to travel. Plaintiff advances arguments that he continues to be irreparably harmed by the stigma of registering as a sex offender under the SORA, that the harms inflicted upon him outweigh any harm to defendant, and that the public interest weighs in favor preventing the denial of his constitutional rights.

### A. Legal and Factual Innocence; Legal Impossibility

Plaintiff's allegations and arguments of legal and factual innocence, and legal impossibility, are based solely on plaintiff's attestations that the victim of the crime for which he was charged was age 19 at the time of the alleged offense, and not between the ages of 13 to 16, as required to prove fourth degree criminal sexual conduct under M.C.L. § 750.520e(1)(a)[1], to which he pleaded guilty. Plaintiff's arguments of legal and factual innocence and legal impossibility based on these attestations constitute an impermissible collateral attack upon his August 9, 2000 guilty plea and September 28, 2000 sentence.

---

[1] "(1) A person is guilty of criminal sexual conduct in the fourth degree if he or she engages in sexual contact with another person and if any of the following circumstances exist: (a) That other person is at least 13 years of age but less than 16 years of age, and the actor is 5 or more years older than that other person." M.C.L. § 750.520e(1)(a).

5

See Wilkinson v. Dotson, 125 S.Ct. 1242, 1248 (2005) (holding that "a state prisoner's § 1983 action is barred (absent prior invalidation) -- no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) -- if success in that action would necessarily demonstrate the invalidity of confinement or its duration").  Prior invalidation means "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." Heck v. Humphrey, 512 U.S. 477, 486-87 (1994).  Plaintiff does not allege nor argue that his state guilty-plea or sentence were ever reversed on direct appeal, expunged by executive order, declared invalid by an authorized state tribunal, or successfully challenged in a federal habeas corpus action.  Success here on plaintiff's arguments of legal and factual innocence and legal impossibility would collaterally demonstrate the invalidity of his September 28, 2000 state sentence and its duration.  Plaintiff's allegations and arguments of legal and factual innocence and legal impossibility are thus barred as a matter of law in the absence of prior invalidation of his guilty plea and sentence, whether couched in terms of cruel and unusual punishment, a denial of equal protection of law, or a denial of substantive due process.  Wilkinson, 125 S.Ct. at 1248; Heck, 512 U.S. at 486-87.

### B. Criminal "Conviction"

As in his motion for a temporary restraining order, plaintiff again argues that he was never "convicted" under the YTA of attempted fourth degree criminal sexual conduct.  At the time of plaintiff's 2000 guilty plea and sentencing, the YTA required that "[a]n individual assigned to youthful trainee status for a listed offense enumerated in section 2 of the sex offenders registration act is required to comply with the requirements of that act." M.C.L. § 762.14(3) (1994).  The crime to which plaintiff pleaded guilty, attempted fourth degree

6

criminal sexual conduct, M.C.L. § 750.520e(1)(a), was a "listed offense" enumerated in the SORA in 2000. See M.C.L. § 28.722(d)(ix) (1999). Section 2 of the SORA expressly provided at the time of plaintiff's guilty plea and sentencing that "'Convicted' means . . . [b]eing assigned to youthful trainee status under sections 11 to 15 of chapter II of the code of criminal procedure, 1927 PA 175, M.C.L. 762.12 to 762.15." M.C.L. § 28.722(a)(ii) (1999). Plaintiff's arguments that he was not "convicted" of attempted fourth degree criminal sexual conduct in violation of M.C.L. § 750.520e(1)(a) is without legal merit in light of plaintiff's own allegations that he was assigned to youthful trainee status under the YTA, and pleaded guilty to a "listed offense" in the SORA requiring his sex offender registration. Plaintiff was "convicted" under M.C.L. § 750.520e(1)(a) by operation of M.C.L. § 28.722(a)(ii) (1999), and his argument to the contrary is without legal basis. Consequently, plaintiff's argument that defendant *falsely* publishes that plaintiff was "convicted" of a criminal sex offense lacks legal or factual merit. Plaintiff's claims of cruel and unusual punishment, denial of equal protection of law, denial of substantive due process, and state law claim of defamation[2] premised on allegations that he was never "convicted" of a sexual assault crime are without merit as a matter of law.

### C. YTA and Non-Public Records

Plaintiff relies primarily upon Judge Holbrook's dissenting opinion in People v. Rahilly, 247 Mich. App. 108, 635 N.W.2d 227 (2001), wherein Judge Holbrook opines that the YTA and SORA, when construed in pari materia, were not intended to require a former youthful trainee to register as a sex offender following his successful release from youthful trainee status. Id. at 119. In dissent, Judge Holbrook noted that the YTA is a remedial

---

[2] Defamation requires proof of a false statement concerning the plaintiff. See Burden v. Elias Brothers Big Boy Restaurants, 240 Mich. App. 723, 726, 613 N.W.2d 378 (2000).

7

statute "designed to give those who successfully complete the assigned punishment a second chance free from all taint associated with conviction." Id. at 119. Judge Holbrook further noted that M.C.L. § 762.14 of the YTA requires that "all proceedings regarding the disposition of the criminal charge . . . shall be closed to public inspection." Id. at 119.

The problem with plaintiff's argument is that the 2-1 majority opinion in Rahilly expressly held over Judge Holbrook's dissent that "there is no provision for removal from the SORA registry on the basis of participation in and completion of the requirements of the YTA." Rahilly, 247 Mich. App. at 112. The majority opinion recognized that the SORA was amended in 1999, "expand[ing] the notification provisions to allow public access to information regarding sex offenders." Id. at 114. The Rahilly majority continued:

> The Legislature amended the YTA to account for the creation of the SORA. Specifically, M.C.L. § 762.14(3) provides:
>
>> An individual assigned to youthful trainee status for a listed offense enumerated in section 2 of the sex offenders registration act is required to comply with the requirements of that act.
>
> Additionally, while M.C.L. § 762.14(2) provides that the assignment of an individual to youthful trainee status does not result in a conviction, for purposes of the SORA, assignment to youthful trainee status, in fact, constitutes a conviction. M.C.L. 28.722(a)(ii) defines convicted as "[b]eing assigned to youthful trainee status under sections 11 to 15 of chapter II of the code of criminal procedure, 1927 PA 175, M.C.L. § 762.12 to 762.15." In fact, M.C.L. § 28.724(5) provides that the sentencing court may not enter an order of disposition or assign an individual to youthful trainee status until it determines that the individual is registered with the local law enforcement or sheriff's department, or the Department of State Police. Once registered, the individual must comply with the SORA for a period of twenty-five years following the person's date of the initial registration or for ten years following the person's release from a state correctional facility, whichever is longer. M.C.L. 28.725(6).
>
> In accordance with the cited rules regarding statutory construction, we presume that the Legislature was aware of the YTA when it enacted the SORA.

Rahilly, 247 Mich. App. at 114-115. The majority decision in Rahilly continues to be

8

followed in Michigan. See In re Wentworth, 251 Mich. App. 560, 567 n.2, 651 N.W.2d 773 (2002) (citing Rahilly for the proposition that the SORA applies to offenders sentenced under the YTA). Plaintiff's allegations and argument that he is being subjected to cruel and unusual punishment, a denial of equal protection of law, or a denial of substantive due process because Michigan's YTA requires that information pertaining to his criminal case be maintained as a non-public record are without merit as a matter of law. Rahilly, 247 Mich. App. at 112, 114-115; M.C.L. § 762.14(3) (1994).

### D. 2000 YTA and SORA Amendments and Equal Protection

The YTA and SORA were amended in 2004 to provide that an individual assigned to youthful trainee status before October 1, 2004 for a "listed offense" in the SORA must comply with the SORA registration requirements, but may petition the court to register for a lesser registration period of 10 years. See M.C.L. § 762.14(3); M.C.L. § 28.728c(1), (15)(c); M.C.L. § 28.728d(1)(b). Individuals assigned to youthful trainee status on or after October 1, 2004 for a "listed offense" in the SORA are not required to comply with the SORA registration requirements. M.C.L. § 762.14(2), (3). Plaintiff argues that application of the 2004 YTA and SORA amendments violates his right to equal protection of law based on an arbitrary distinction of whether a similarly situated individual was assigned YTA youthful trainee status before or after October 1, 2004.

"There is no requirement that two persons convicted of the same offense receive identical sentences." Frazier v. Manson, 703 F.2d 30, 36 (2nd Cir. 1983), cert. denied, 464 U.S. 934 (1983) (quoting Williams v. Illinois, 399 U.S. 235, 243 (1970)). "A legislature may prospectively reduce the maximum penalty for a crime even though prisoners sentenced to the maximum penalty before the effective date of the act would serve a longer term of imprisonment than one sentenced to the maximum term thereafter." Frazier, 703 F.2d at 36. The failure to apply a reduced penalty to persons sentenced before the effective date

of an amendment is not an arbitrary denial of equal protection of law because "[t]here is nothing unconstitutional in a legislature's conferring a benefit on prisoner's only prospectively." Jones v. Cupp, 452 F.2d 1091, 1093 (9th Cir. 1971) (citing Comerford v. Commonwealth, 233 F.2d 294, 295 (1st Cir. 1956)).

The 2004 amendments of the YTA and SORA, removing the SORA registration requirement for individuals assigned youthful trainee status on or after October 1, 2004, do not constitute a violation of plaintiff's right to equal protection of law by failing to extend the non-registration benefit retroactively. Frazier, 703 F.2d at 36; Jones, 452 F.2d at 1093. Plaintiff does not allege nor argue that his registration requirements are different than other similarly situated individuals assigned youthful trainee status before October 1, 2004. Plaintiff's equal protection claim premised on the different registration requirements imposed under the YTA and SORA based on when an individual was assigned youthful trainee status fails as a matter of law. Id.

### E. Virginia Registration Requirement

Plaintiff's allegations and argument that he is required to surrender his Michigan residency as a Virginia college student challenges Virginia law. Plaintiff has not identified a Michigan SORA provision which requires plaintiff to change his state of residency or citizenship upon attending college in another state. M.C.L. 28.725(3) of the SORA provides:

> An individual required to be registered under this act shall notify the department on a form prescribed by the department not later than 10 days before he or she changes his or her domicile or residence to another state. The individual shall indicate the new state and, if known, the new address. The department shall update the registration and compilation databases and promptly notify the appropriate law enforcement agency and any applicable sex or child offender registration authority in the new state.

Once the appropriate Virginia law enforcement agency and sex offender registration authority were notified by defendant that plaintiff is required to register as a sex offender

10

in Michigan, and is now domiciled or residing in Virginia, Virginia law controls plaintiff's registration requirement. Even assuming Virginia law requires plaintiff to surrender his Michigan driver's license and acquire a Virginia driver's license to fulfil the sex offender registration laws of Virginia, plaintiff's instant constitutional challenge is misdirected at Michigan's SORA; Michigan's SORA does not require plaintiff to change his Michigan residency or surrender his Michigan driver's license.

### F. Procedural and Substantive Due Process

In general terms, plaintiff has emphasized his denial of procedural and substantive due process claims. In Conn. Dep't. of Pub. Safety v. Doe, 538 U.S. 1 (2003), the Supreme Court rejected a procedural due process challenge to Connecticut's sex offender registration act, finding that the plaintiff registrant was not entitled to a separate hearing on the issue of whether he was "currently dangerous" because the sole registration requirement, as under Michigan's SORA, was simply a sex crime "conviction," "a fact that a convicted offender has already had a procedurally safeguarded opportunity to contest." Id. at 7-8. The Supreme Court expressed no opinion whether Connecticut's sex offender act violated principles of substantive due process. Id. at 8. The Sixth Circuit has since applied the holding of Connecticut Department of Public Safety v. Doe in striking down a procedural due process challenge to Michigan's SORA registration scheme. Fullmer v. Mich. Dept. of State Police, 360 F.3d 579, 582 (6th Cir. 2004). And in Akella v. Mich. Dept. of State Police, 67 F.Supp.2d 716 (E.D. Mich. 1999), Judge Duggan of this Eastern District of Michigan dismissed a substantive due process challenge to Michigan's SORA:

> Applying the test articulated by the Sixth Circuit in Curto [v. City of Harper Woods, 954 F.2d 1237, 1243 (6th Cir.1992)], the Court concludes that the Act does not violate plaintiffs' substantive due process rights. As previously stated herein, the regulation advances a legitimate government interest in protecting the community by promoting awareness of the presence of convicted sex offenders from whom certain members of the community may face a danger. The Act is a reasonable means of advancing the interest

11

> because its mechanism for notification enhances a community member's ability to determine the presence of a convicted sex offender in his or her community. Plaintiffs claim the Act is an "unreasonable" means of advancing the government's interest because by requiring the registration of all offenders the statute ignores the rehabilitative goals of the justice system in that some released offenders may no longer pose a threat to the community. However, the purpose of the statute is to promote awareness of the presence of an offender, and this aim is reasonably accomplished by notification, irrespective of the threat of prospective harm. Thus, the Court concludes that Doe and Roe plaintiffs' substantive due process claims must fail.

Akella, 67 F.Supp.2d at 733.

Plaintiff does not proffer precedent to affirmatively support his position, but instead attempts to distinguish Connecticut Department of Public Safety v. Doe, Fullmer, and Akella, without success. Plaintiff's repeated arguments that he is being deprived of his rights to procedural and substantive due process through the defendant's *false* publication of *non-public* information that plaintiff was *convicted* of a sex crime are wholly without merit. See Section II, A-C, supra. Plaintiff's assertion that he is being deprived of his fundamental right to "liberty" is conclusionary. Injuries to reputation do not constitute the deprivation of a protected "liberty interest," even if the injury results from defamation. Conn. Dep't. of Pub. Safety v. Doe, 538 U.S. at 6-7 (citing Paul v. Davis, 424 U.S. 693 (1976)). Plaintiff's argument that he is being deprived of a constitutionally protected "right to be free from government defamation" is legally and factually without merit. Id. Plaintiff's allegation and argument that he is being deprived of a "right to travel" is undercut by plaintiff's factual allegation that he is a Michigan resident currently residing in Virginia while attending college there. Plaintiff's assertion that he is being deprived of his right to privacy under the "stigma-plus" test recognized in Fullmer, 360 F.3d at 581, citing Cutshall v. Sundquist, 193 F.3d 466, 479 (6th Cir. 1999), is without basis considering the Sixth Circuit rejected the Cutshall plaintiff's arguments that he enjoyed a constitutionally protected right to private employment or a general right to privacy. Cutshall, 193 F.3d at 480-482. "[T]he Constitution does not

12

encompass a general right to nondisclosure of private information." Cutshall, 193 F.3d at 480 (quoting J.P. v. DeSanti, 653 F.2d 1080, 1090 (6th Cir. 1981) (holding that postadjudication dissemination of juvenile offenders' private histories to various government, social, and religious agencies, without consent, did not implicate a constitutionally protected right of privacy). Plaintiff has not made a colorable showing that he is been denied a constitutionally protected liberty or privacy interest.

### G. Michigan Constitution

The Michigan Supreme Court has, on occasion, construed the Michigan Constitution to provide greater rights than those provided under the federal constitution "where there is compelling reason" to do so. Middlebrooks v. Wayne County, 446 Mich. 151, 165, 521 N.W.2d 774 (1994) (quoting People v. Nash, 418 Mich. 196, 214-215, 341 N.W.2d 439 (1983)). Plaintiff has failed to proffer Michigan authority to support a finding of broader protections enjoyed under the Michigan Constitution than the federal constitution. Neither has plaintiff advanced a compelling reason for applying a broader interpretation of the Michigan Constitution. Indeed, Michigan courts have applied federal law in rejecting due process challenges to the SORA. See In re Wentworth, 251 Mich. App. 560 (rejecting due process challenges of juvenile required to register under the Michigan SORA).

### IV. Conclusion

Plaintiff's complaint, motion for a temporary restraining order, and motion for preliminary/permanent injunction and declaratory relief raise purely legal issues, which have now twice been thoroughly briefed by both parties and addressed by this court. Plaintiff has failed to state a claim upon which declaratory or injunctive relief may be granted as a matter of law. See Rule 12(b)(6); Conley v. Gibson, 355 U.S. 41, 45-46 (1957) ("[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would

entitle him to relief"). Plaintiff's claims are ripe for dismissal and entry of a final appealable order.

Defendant has not moved to dismiss plaintiff's claims. "Dismissals by a district court on its own initiative are disfavored." United Brotherhood of Carpenters and Joiners of America, Dresden Local No. 267 v. Ohio Carpenters Health and Welfare Fund, 926 F.2d 550, 557 (6th Cir. 1991). Where the parties have fully briefed the issues and the court has stated its reasons for dismissal, a district court is cautioned to notify all parties of its intent to dismiss the complaint, giving the plaintiff time to respond to the court's reasons for sua sponte dismissal. Id. at 557-58. Accordingly,

Plaintiff Lamont Jordan's motion for preliminary and/or permanent injunctive relief and declaratory relief is hereby DENIED. Plaintiff is hereby ordered to SHOW CAUSE, in a writing filed with the court not to exceed 10 pages, filed on or before December 1, 2005, why his claims should not be dismissed. Failure to timely show cause will result in dismissal of plaintiff's claims, and entry of final judgment.

SO ORDERED.

                                          s/George Caram Steeh
                                          GEORGE CARAM STEEH
                                          UNITED STATES DISTRICT JUDGE

Dated: November 1, 2005

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record on November 1, 2005, by electronic and/or ordinary mail.

                                          s/Josephine Chaffee
                                          Secretary/Deputy Clerk